IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF VIRGINIA

Richmond Division

| | |
|---|---|
| SHANNON PHELPS, <br> Plaintiff, <br> v. <br> MICHAEL J. ASTRUE, <br> Commissioner of Social Security, <br> Defendant. | ) <br> ) <br> ) <br> ) CIVIL NO. 3:12cv492-REP <br> ) <br> ) <br> ) <br> ) <br> ) |

## REPORT AND RECOMMENDATION

Shannon Phelps ("Plaintiff") is 41 years old and previously obtained the rank of a sergeant in the military, where she worked as a jet engine mechanic and a truck driver. She left the Army on terminal leave in May 2001. On July 15, 2010, Plaintiff protectively applied for Social Security Disability ("DIB") and Supplemental Security Insurance ("SSI") under the Social Security Act ("the Act") with an amended alleged onset date of May 1, 2010, claiming disability due to migraines, cutaneous lupus erythematous, chronic obstructive pulmonary disease, asthma, polymorphous light eruption, post-traumatic stress disorder ("PTSD"), anxiety, depression, osteoarthritis, fibromyalgia, back spasms, joint and feet pain, sensorineural hearing loss, hyperthyroidism, bladder problems, gastroesophageal reflux disease and a sensitivity to the sun. On January 19, 2012, the U.S. Department of Veterans' Affairs ("VA") determined that Plaintiff was 100% disabled. Plaintiff's disability claim was also presented to an administrative law judge ("ALJ") at the Social Security Administration ("SSA"), who denied Plaintiff's requests for benefits. The Appeals Council subsequently denied Plaintiff's request for review.

Although the ALJ noted that she considered the VA's disability rating in her decision, the ALJ assigned it "little weight" "because we are no[t] bound by the VA's rating and that Administration uses different analysis." (R. at 15.) Plaintiff now challenges the ALJ's denial of benefits, asserting that the ALJ could not assign the VA's disability decision little weight solely because the VA and SSA used different analysis in determining disability. (Pl.'s Mem. of Points and Author. in Supp. of Mot. for Summ. J. ("Pl.'s Mem.") at 6-8.) The Commissioner argues that such an explanation was proper, given the fact that the VA requires less proof for disability claims than the SSA. (Def.'s Mot. for Summ. J. and Brief in Supp. Thereof ("Def.'s Mem.") at 14-15.) Plaintiff then submitted a supplemental brief requesting this Court to consider the Fourth Circuit's recent ruling in *Bird v. Commissioner of Social Security Administration*, 699 F.3d 337 (4th Cir. Nov. 9, 2012), which requires the Commissioner to give VA disability determinations substantial weight, unless the record demonstrates that such weight is inappropriate. (Pl.'s Br. in Supp. of Mot. to Supp. the Rec. with New Caselaw ("Pl.'s Supp. Br.") at 1.) The Commissioner replied, explaining that the Fourth Circuit's most recent Social Security decision is distinguishable from the present matter, because assigning substantial weight to the VA's decision was not proper. (Def.'s Br. in Resp. to Pl.'s Mot. to Supp. the Rec. with New Caselaw ("Def.'s Resp.") at 1-2.)

Plaintiff seeks judicial review of the ALJ's decision in this Court pursuant to 42 U.S.C. § 405 (g). The parties have submitted cross-motions for summary judgment, which are now ripe for review. Having reviewed the parties' submissions and the entire record in the case, the Court is now prepared to issue a report and recommendation pursuant to 28 U.S.C. § 636(B)(1)(B). For the reasons that follow, it is the Court's recommendation that Plaintiff's motion for summary judgment (ECF No. 8) be GRANTED; that Defendant's motion for summary judgment (ECF

2

No. 10) be DENIED; and that the final decision of the Commissioner be VACATED and REMANDED for further consideration consistent with *Bird v. Comm. Soc. Sec. Admin.*, 699 F.3d 337 (4th Cir. Nov. 9, 2012).

## I. BACKGROUND

Plaintiff challenges whether the ALJ properly considered the VA's disability determination. Due to the Fourth Circuit's recent ruling in *Bird*, 699 F.3d 337, the Court will include an abbreviated background.

### A. The VA's Disability Rating

Plaintiff filed for disability through the VA on July 28, 2011. (*See* R. at 351.) On January 19, 2012, the VA determined that Plaintiff was fully disabled. (*See* R. at 351-86.) In doing so, the VA noted the percentages of disability for each of Plaintiff's illnesses, which included: 60% from urinary stress incontinence; 60% from irritable bowel syndrome with gastroesophageal reflux disease; 50% from major depressive disorder; 30% from hysterectomy with right salpingo-oophorectomy with residual abdominal scar; 30% from trochanteric bursitis with labral tear and subchondral cyst, right hip; 30% from migraine headaches; 30% from endometriosis with left ovarian cyst; 20% from hyperthyroidism; 10% from sinusitis; 10% from carpal tunnel syndrome, left upper extremity; 10% from left wrist strain; 10% from bilateral tinnitus; 10% from osteoarthritis, right knee; 10% from left knee osteoarthritis; 10% from discoid lupus with eczema and polymorphous light eruption; 10% from degenerative disc/joint disease, cervical spine; 10% from lumbar strain; 10% from plantar fasciitis with pes planus and bilateral heel spurs; 10% from fibromyalgia; 10% from degenerative changes with tendonitis, right shoulder, post-operative; 10% from tendonitis left shoulder, post-operative; 10% from trochanteric bursitis, left hip; and 10% from asthma with chronic obstructive pulmonary disease.

(R. at 353-54.) This disability rating was effective July 28, 2011, the date of Plaintiff's claim. (*See* R. at 351, 354.)

In coming to its decision, the VA evaluated hundreds of pages of evidence, including letters and statements from Plaintiff; service treatment records from October 15, 1990, through July 27, 2011; and treatment reports from the VA Medical Center in Richmond, Virginia, from February 22, 2011, through January 11, 2012. (R. at 362.)

The VA then explained its ratings for each disabling condition. (R. at 362-86.) Plaintiff was determined to be 60% disabled from her urinary stress incontinence, because she needed to wear absorbent materials that were required to be changed more than four times per day. (R. at 362.) The VA rated Plaintiff's irritable bowel syndrome with gastroesophageal reflux disease at 60% disabling, because she had symptoms of extensive leakage, fairly frequent involuntary bowel movements and symptoms of pain, vomiting, material weight loss as well as hematemesis or melena. (R. at 363.) Plaintiff's major depressive disorder was rated at 50% disabling, because she had "occupational and social impairment with reduced reliability and productivity" with various symptoms. (R. at 364-65.) Plaintiff was 30% disabled from trochanteric bursitis with labral tear and subchondral cyst, right hip, because her right hip was limited in flexion to 20 degrees. (R. at 366-67.)

The VA rated Plaintiff's migraine headaches as 30% disabling, because there were "characteristic prostrating attacks occurring on an average of once a month." (R. at 367-68.) Her hyperthyroidism was evaluated at 20% disabling, because Plaintiff had generalized weakness, cold intolerance and palpitations as a result of the condition. (*See* R. at 368-69.) Plaintiff was 10% disabled from tinnitus, because it was recurrent. (R. at 372.) Bilateral osteoarthritis resulted in a 10% disability, because Plaintiff had a decreased range of motion in

her knees with pain. (R. at 372-74.) The VA rated Plaintiff's discoid lupus with eczema and polymorphous light eruption at 10% disabling, because she had exacerbations of the condition once or twice a year and a skin rash at her VA evaluation. (R. at 374-75.)

Plaintiff received a rating of 10% disability from her degenerative disc/joint disease of her cervical spine, because she had a decreased range of motion of the cervical spine with pain. (R. at 375.) Her lumbar strain was 10% disabling, because she had a decreased range of motion with pain to the lumbar spine. (R. at 375-76.) The VA rated Plaintiff's fibromyalgia as 10% disabling, because the condition was treated with medication. (R. at 377-78.) Due to her decreased range of motion, Plaintiff was also rated as 10% disabled from bilateral shoulder tendonitis and trochanteric bursitis of the left hip. (R. at 378-80.) She was 10% disabled from asthma with chronic obstructive pulmonary disease, because she required medication intermittently. (R. at 380-81.) Plaintiff was not disabled from bilateral hearing loss. (R. at 381.)

## B. The ALJ's Disability Determination

The ALJ found at step one that Plaintiff had not engaged in substantial gainful employment since the amended onset date of her disability. (R. at 10.) The ALJ noted that Plaintiff had "since received a 100% disability rating and benefits through the" VA. (R. at 10.) At steps two and three, the ALJ found that Plaintiff had severe impairments from lupus, degenerative disc disease of the lumbar spine, bilateral hip tronchanteric bursitis, right shoulder tendonitis, migraine headaches, obesity, asthma/allergies, plantar fasciitis, depression and PTSD, but that these impairments did not meet or equal any listing in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 11-12.)

At step three, the ALJ found that Plaintiff had the necessary RFC to perform less than the full range of light work:

> Plaintiff could occasionally climb stairs and ramps, balance, stoop, kneel, crouch and crawl. She must never climb ropes, ladders or scaffolds. She should avoid concentrated exposure to fumes, odors, dusts, gasses, poor ventilation and other pulmonary irritants, as well as hazardous machinery and heights. She must avoid concentrated exposure to very loud noises. She should also avoid concentrated exposure to extreme temperature changes including heat and cold, and work indoors and not out in the sun due to lupus. Due to her musculoskeletal impairments, she would need to use either a cane or a rolling walker with a seat to assist with prolonged ambulation. She [was] able to perform simple, routine tasks and work that involve[d] occasional interaction with co-workers and the general-public. She [could] make simple decisions.

(R. at 12.) In making this finding, the ALJ noted that Plaintiff was 5'9" tall and weighed approximately 241 pounds. (R. at 13.) She completed high school and served in the Air Force from 1990-2000 as a jet engine mechanic and in the Army from 2008-2011 as a truck driver. (R. at 13.) On July 27, 2011, Plaintiff was discharged and, soon thereafter, was granted a 100% disability rating from the VA "due to her medical condition." (R. at 13.)

The ALJ explained that Plaintiff alleged disability from "adverse reactions to the sun secondary to polymorphous light eruption, pain, PTSD and lupus, allergy to the sun" and that she indicated that "she must be completely covered [] due to symptoms of Lupus, tears in the right and left hips, and migraines." (R. at 13.) She additionally alleged that she could lift no more than 10 pounds and stand for 15-20 minutes with movement. (R. at 13.)

Plaintiff lived with her husband and 14-year old son. (R. at 13.) The only chore that she performed was putting soap and fabric softener in the washing machine. (R. at 13.) She would also help her son with schoolwork. (R. at 13.) Plaintiff had difficulty in large crowds and visited with friends and family socially at her house. (R. at 13.) Her husband drove her when needed. (R. at 13.)

For 4-5 hours per day, Plaintiff would lie down. (R. at 13.) She estimated that she had 1-2 "good days" per week, when she would not require pain medication. (R. at 13.) However, for

6

the most part, Plaintiff stayed at home, sleeping and in constant pain from lupus. (R. at 13.)

Plaintiff's husband testified to how Plaintiff's illness changed her quality of life. (R. at 13-14.) Plaintiff also admitted to having enrolled in four classes — two online and two at school — and passed each one. (R. at 14.) Although she was taking four classes at the time of the hearing — all online — she was behind and anticipated dropping from the classes. (R. at 14.) Additionally, in written statements Plaintiff admitted to engaging in laundry, yard work, grocery shopping, ceramics painting, book reading, camping and driving. (R. at 14.) Other third-party statements documented that Plaintiff took care of pets, prepared meals and read. (R. at 14.)

The ALJ then determined that Plaintiff had no significant limitations or restrictions in her actual level of functioning, including cognition. (R. at 14.) She was on medication and received treatment for her PTSD without a decline in her ability to function. (R. at 14.) Therefore, the ALJ found that Plaintiff's anxiety and depression caused only mild or moderate restrictions. (R. at 14-15.)

Next, the ALJ noted that Plaintiff "did not exhibit any problems with communicating with or hearing anyone." (R. at 15.) Although she had been prescribed a walker, she did not bring it to the hearing. (R. at 15.) Plaintiff drove a few times a week, although she stated that she did not drive due to the side effects from her medication. (R. at 15.) The ALJ determined that Plaintiff's statements and her husband's statements about school were inconsistent and diminished her credibility. (R. at 15.)

The ALJ then assigned the non-treating state agency physicians' opinions limited and partial weight, although they determined that Plaintiff had the necessary mental and physical RFC to perform work. (R. at 15.) The ALJ also gave little weight to the opinion of Plaintiff's treating physician, because Plaintiff could walk at the hearing. (R. at 15.) Finally, "[w]ith

regard to the Veteran's Disability Rating, little weight [was] given because we are no[t] bound by the VA's rating and that Administration uses different analysis."[1] (R. at 15.)

At step four of the analysis, the ALJ determined that Plaintiff could not perform her past relevant work. (R. at 16.) Next, considering Plaintiff's age, education, work experience and RFC, the ALJ determined that there were jobs that existed in significant numbers in the national economy that Plaintiff could perform. (R. at 16-17.) Accordingly, the ALJ concluded that Plaintiff was not disabled under the Act and was employable such that she was not entitled to benefits. (R. at 17.)

## II. PROCEDURAL HISTORY

Plaintiff protectively filed for DIB and SSI on July 15, 2010, claiming disability due to migraines, cutaneous lupus erythematous, chronic obstructive pulmonary disease, asthma, polymorphous light eruption, PTSD, anxiety, depression, osteoarthritis, fibromyalgia, back spasms, joint and feet pain, sensorineural hearing loss, hyperthyroidism, bladder problems, gastroesophageal reflux disease and a sensitivity to the sun with an alleged onset date of March 8, 2009, later amended to May 1, 2010. (R. at 8, 265, 290.) The SSA denied Plaintiff's claims initially and on reconsideration.[2] (R. at 147-49, 154-59.) On August 23, 2011, and February 2, 2012, an administrative hearing was conducted before an ALJ. (R. at 25-94.) On March 15,

---

[1] At Plaintiff's hearing before the ALJ, the ALJ noted that Plaintiff had been given disability ratings by the VA. (R. at 79.) After she reviewed the medical record, that included over 1,000 pages from McDonald Army Hospital, Port Smith Navel Medical Center and Behavior Health Services, the ALJ stated that she did not "see any strong evidence that [Plaintiff] would be disabled from doing any work at all." (R. at 79-80.)

[2] Initial and reconsideration reviews in Virginia are performed by an agency of the state government — the Disability Determination Services (DDS), a division of the Virginia Department of Rehabilitative Services — under arrangement with the SSA. 20 C.F.R. Part 404, Subpart Q; *see also* § 404.1503. Hearings before administrative law judges and subsequent proceedings are conducted by personnel of the federal SSA.

2012, the ALJ denied Plaintiff's application for benefits, finding that she was not disabled under the Act. (R. at 8-17.) The Appeals Council denied Plaintiff's request for review on May 9, 2012, making the ALJ's decision the final decision of the Commissioner and subject to judicial review by this Court. (*See* R. at 1-3.)

### III. QUESTIONS PRESENTED

Did the Commissioner apply the correct standard of law in weighing the VA disability determination?

### IV. STANDARD OF REVIEW

In reviewing the Commissioner's decision to deny benefits, the Court is limited to determining whether the Commissioner's decision was supported by substantial evidence on the record and whether the proper legal standards were applied in evaluating the evidence. *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. Jan. 5, 2012) (citing *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005)). Substantial evidence is more than a scintilla, less than a preponderance, and is the kind of relevant evidence a reasonable mind could accept as adequate to support a conclusion. *Id.* (citations omitted); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996) (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

To determine whether substantial evidence exists, the Court is required to examine the record as a whole, but it may not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [ALJ]." *Hancock*, 667 F.3d at 472 (citation and internal quotation marks omitted); *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Craig*, 76 F.3d at 589). In considering the decision of the Commissioner based on the record as a whole, the Court must "take into account whatever in the record fairly detracts from its weight." *Breeden v. Weinberger*, 493 F.2d 1002, 1007 (4th Cir. 1974) (quoting

*Universal Camera Corp. v. N.L.R.B.*, 340 U.S. 474, 488 (1951) (internal quotation marks omitted)). The Commissioner's findings as to any fact, if the findings are supported by substantial evidence, are conclusive and must be affirmed. *Hancock*, 667 F.3d at 476 (citation omitted). While the standard is high, if the ALJ's determination is not supported by substantial evidence on the record, or if the ALJ has made an error of law, the district court must reverse the decision. *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987).

A sequential evaluation of a claimant's work and medical history is required to determine if a claimant is eligible for benefits. 20 C.F.R. §§ 416.920, 404.1520; *Mastro*, 270 F.3d at 177. The analysis is conducted for the Commissioner by the ALJ, and it is that process that a court must examine on appeal to determine whether the correct legal standards were applied and whether the resulting decision of the Commissioner is supported by substantial evidence on the record. *See Mastro*, 270 F.3d at 176-77.

The first step in the sequence is to determine whether the claimant was working at the time of the application and, if so, whether the work constituted "substantial gainful activity" ("SGA").[3] 20 C.F.R. §§ 416.920(b), 404.1520(b). If a claimant's work constitutes SGA, the analysis ends and the claimant must be found "not disabled," regardless of any medical condition. *Id.* If the claimant establishes that she did not engage in SGA, the second step of the analysis requires her to prove that she has "a severe impairment . . . or combination of impairments which significantly limit[s] [her] physical or mental ability to do basic work

---

[3] SGA is work that is both substantial and gainful as defined by the Agency in the C.F.R. Substantial work activity is "work activity that involves doing significant physical or mental activities. Your work may be substantial even if it is done on a part-time basis or if you do less, get paid less, or have less responsibility than when you worked before." 20 C.F.R. § 404.1572(a). Gainful work activity is work activity done for "pay or profit, whether or not a profit is realized." 20 C.F.R. § 404.1572(b). Taking care of oneself, performing household tasks or hobbies, therapy or school attendance, and the like are not generally considered substantial gainful activities. 20 C.F.R. § 404.1572(c).

10

activities." 20 C.F.R. § 416.920(c); *see also* 20 C.F.R. § 404.1520(c). To qualify as a severe impairment that entitles one to benefits under the Act, it must cause more than a minimal effect on one's ability to function. 20 C.F.R. § 404.1520(c).

At the third step, if the claimant has an impairment that meets or equals an impairment listed in 20 C.F.R. pt. 404, subpt. P, app. 1 (listing of impairments) and lasts, or is expected to last, for twelve months or result in death, it constitutes a qualifying impairment and the analysis ends. 20 C.F.R. §§ 416.920(d), 404.1520(d). If the impairment does not meet or equal a listed impairment, then the evaluation proceeds to the fourth step in which the ALJ is required to determine whether the claimant can return to her past relevant work[4] based on an assessment of the claimant's residual functional capacity ("RFC")[5] and the "physical and mental demands of work [the claimant] has done in the past." 20 C.F.R. §§ 416.920(e), 404.1520(e). If such work can be performed, then benefits will not be awarded. *Id.* The burden of proof remains with the claimant through step four of the analysis, such that she must prove that her limitations preclude her from performing her past relevant work. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Hancock*, 667 F.3d at 472 (citation omitted).

However, if the claimant cannot perform her past work, the burden then shifts to the Commissioner at the fifth step to show that, considering the claimant's age, education, work

---

[4] Past relevant work is defined as SGA in the past fifteen years that lasted long enough for an individual to learn the basic job functions involved. 20 C.F.R. §§ 416.965(a), 404.1565(a).

[5] RFC is defined as "an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." SSR-96-8p. When assessing the RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (*i.e.*, 8 hours a day, 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity that the individual can perform based on the evidence available in the case record. *Id.* (footnote omitted).

experience and RFC, the claimant is capable of performing other work that is available in significant numbers in the national economy. 20 C.F.R. §§ 416.920(f), 404.1520(f); *Powers v. Apfel*, 207 F.3d 431, 436 (7th Cir. 2000) (citing *Yuckert*, 482 U.S. at 146 n.5). The Commissioner can carry his burden in the final step with the testimony of a vocational expert ("VE"). When a VE is called to testify, the ALJ's function is to pose hypothetical questions that accurately represent the claimant's RFC based on all evidence on record and a fair description of all of the claimant's impairments, so that the VE can offer testimony about any jobs existing in the national economy that the claimant can perform. *Walker v. Bowen*, 889 F.2d 47, 50 (4th Cir. 1989). Only when the hypothetical posed represents all of the claimant's substantiated impairments will the testimony of the VE be "relevant or helpful." *Id.* If the ALJ finds that the claimant is not capable of SGA, then the claimant is found to be disabled and is accordingly entitled to benefits. 20 C.F.R. §§ 416.920(f)(1), 404.1520(f)(1).

## V. ANALYSIS

Plaintiff argues that the ALJ erred when she failed to give great weight to the VA's disability determination. (Pl.'s Mem. at 6.) More specifically, she asserts that the ALJ's reason for assigning little weight to the VA's decision — because the Commissioner is not "bound by the VA's rating and that Administration uses a different analysis" — is reversible error. (Pl.'s Mem. at 7-8.) In contrast, the Commissioner explains that the SSA is not bound by the VA's ratings and that the VA uses a different analysis that requires less proof than the SSA requires. (Def.'s Mem. at 14.) Regardless, the ALJ did not ignore the VA's disability determination and, in fact, "considered the records upon which the VA's determination was based." (Def.'s Mem. at 14.)

Since this case became ripe for review, the Fourth Circuit in *Bird v. Commissioner of the Social Security Administration*, 699 F.3d 337 (4th Cir. Nov. 9, 2012), has required retrospective consideration of VA medical evidence and VA decisions adjudicated after a claimant's date last insured ("DLI") period expired. In *Bird*, the VA determined that a Vietnam War Veteran suffered from PTSD and labeled him 100% disabled. *Id.* at 339. The plaintiff did not obtain medical treatment for many years and presented medical evidence of his disability dated to the VA. *Id.* at 339-40. Although this evidence was dated after the plaintiff's DLI, clinical findings by a VA psychologist indicated that the plaintiff's symptoms had persisted since his return from the Vietnam War and supported the VA determination of disability. *Id.* When this same evidence was presented to the Commissioner, however, he found that even though the plaintiff suffered from PTSD, it was neither severe nor disabling before his DLI, thus preluding him from receiving DIB. *Id.* at 340. In reaching his decision, the Commissioner noted the plaintiff's lack of medical evidence before his DLI and the effective date of the VA rating decision, which was 15 months after the DLI. *Id.*

The Fourth Circuit vacated and remanded the Commissioner's decision, finding that "[m]edical evaluations made after a claimant's insured status has expired are not automatically barred from consideration and may be relevant to prove a disability arising before the claimant's DLI." *Id.* (citing *Wooldridge v. Bowen*, 816 F.2d 157, 160 (4th Cir. 1987)). Because there was significant evidence that the plaintiff's degenerative disability existed before the VA determination, the Commissioner was required to "give retrospective consideration" to the evidence dated after plaintiff's DLI. *Bird*, 699 F.3d at 342. This consideration is particularly applicable when such evidence "provide[s] sufficient linkage 'reflective of a possible earlier and

progressive degeneration.'" *Id.* (quoting *Moore v. Finch*, 418 F.2d 1224, 1226 (4th Cir. 1969)). Failing to give retrospective consideration was an error of law. *Id.*

Next, while acknowledging that another agency's disability determination is not binding on the SSA, the Fourth Circuit noted that "at least some weight" should be afforded to the VA disability determination, because both the VA and SSA "serve the same governmental purpose of providing benefits to persons unable to work because of a serious disability." *Id.* at 343. Continuing, because both agencies evaluate a claimant's ability to work in the national economy, focus on a claimant's functional limitations and require extensive medical documentation in support of a claim, "a disability rating by one of the two agencies is *highly relevant* to the disability determination of the other agency." *Id.* (emphasis added). Consequently, the SSA "*must* give substantial weight to a VA disability rating" and may only give less weight "when the record before the ALJ clearly demonstrates that such a deviation is appropriate." *Id.* (emphasis added).

Since *Bird* was handed down, Plaintiff filed a supplemental brief, arguing that *Bird* is "a precedential ruling" which requires VA disability determinations to be accorded substantial weight. (Pl.'s Supp. Br. at 1.) In response, the Commissioner argues that Bird is distinguishable and would not impact the ALJ's finding that Plaintiff is not disabled. (Def.'s Resp. at 1.) While the Commissioner recognizes that the ALJ must give substantial weight to a VA disability rating under *Bird*, he also notes that less weight can be assigned when the record clearly demonstrates that less weight is appropriate. (Def.'s Resp. at 1.) He then explains why the deviation is appropriate. (Def.'s Resp. at 1-3.)

While the ALJ assigned the VA's determination little weight, she did so because she felt that she was not "bound by the VA's rating" and the VA "use[d] different analysis." (R. at 15.)

As the Commissioner concedes, the VA and the SSA reviewed the same records, but came to two different conclusions about Plaintiff's disability status. (*See* Def.'s Mem. at 14.) However, in her decision, the ALJ did not explain why assigning the VA's disability determination little — instead of substantial — weight was clearly demonstrated in the record.

While the Commissioner argues that there was substantial weight in the record to support a finding that Plaintiff was not disabled under the Act, the ALJ failed to provide such (or any) reasoning when she assigned the VA's disability determination little weight. The Commissioner again explains that VA ratings are not binding on the SSA; while even *Bird* recognized this fact, the Fourth Circuit nonetheless clearly explained that the Commissioner "*must* give substantial weight to a VA disability rating." *Bird*, 699 F.3d at 343. The Commissioner also asserts that Plaintiff "did not explain how the weight given to her VA rating would change the outcome of this case," as required under *Shinseski v. Sanders*, 556 U.S. 396, 409 (2009). (Def.'s Resp. at 3.) In this case, Plaintiff does not need such an explanation, as the result is obvious — an assignment of substantial weight instead of little weight to the VA's disability rating would, more likely than not, result in a finding that Plaintiff is disabled.

Finally, the Commissioner attempts to distinguish *Bird* from the present case, because the plaintiff in *Bird* obtained a 100% disability rating based on the plaintiff's PTSD, but here Plaintiff "did not specify which of her several individual medical conditions (raised with the VA) pertain to the impairments she alleged in her SSA materials." (Def.'s Resp. at 2.) This argument fails, as the majority of the medical maladies that Plaintiff asserted in her SSA application were also discussed in the VA disability rating. (*Compare* R. 290 *with* R. 351-86.) More specifically, the three highest disability ratings that Plaintiff's conditions received from the VA (60% disabled from urinary stress incontinence; 60% disabled from irritable bowel syndrome with

15

gastroesophageal reflux disease; and 50% disabled from major depressive disorder) (R. at 353-54) were also alleged in her SSA application (gastroesophageal reflux disease, bladder problems, PTSD, anxiety and depression) (R. at 290). Therefore, on remand the ALJ must give substantial weight to the VA disability determination or explicitly detail the reasons for deviating from the VA's outcome.[6] *See Bird*, 699 F.3d at 343 ("an ALJ may give less weight to a VA disability rating when the record before the ALJ clearly demonstrates that such a deviation is appropriate").

## VI. CONCLUSION

Based on the foregoing analysis, it is the recommendation of this Court that Plaintiff's motion for summary judgment (ECF No. 8) be GRANTED; that Defendant's motion for summary judgment (ECF No. 10) be DENIED; and, that the final decision of the Commissioner be VACATED and REMANDED for further consideration consistent with *Bird v. Comm. Soc. Sec. Admin.*, 699 F.3d 337 (4th Cir. Nov. 9, 2012).

Let the Clerk forward a copy of this Report and Recommendation to the Honorable Robert E. Payne and to all counsel of record.

## NOTICE TO PARTIES

**Failure to file written objections to the proposed findings, conclusions and recommendations of the Magistrate Judge contained in the foregoing report within fourteen (14) days after being served with a copy of this report may result in the waiver of any right to a *de novo* review of the determinations contained in the report and such failure**

---

[6] Because the ALJ must conduct a reweighing of the evidence on remand, this Court will not discuss whether substantial evidence supported the ALJ's weight assigned to Plaintiff's treating physician's opinion and the ALJ's RFC determination as well as whether the ALJ properly evaluated Plaintiff's obesity.

shall bar you from attacking on appeal the findings and conclusions accepted and adopted by the District Judge except upon grounds of plain error.

/s/ David J. Novak
David J. Novak
United States Magistrate Judge

Richmond, Virginia
Dated: December 7, 2012